IN THE MATTER OF THE PETITION OF GEORGE W. JAEGLE AND ROSS M. WICKHAM, PRAYING THAT CHAPTER 325 OF THE LAWS OF 1911 BE DECREED NULL AND VOID.

Argued June 13, 1912—Decided December 11, 1912.

A bill having been introduced into and passed by the house of assembly was sent by it to the senate for the latter's consideration of, and action upon, the measure. The senate upon its consideration of the bill amended it in several particulars, passed it in its amended form, and returned it to the assembly, and that body then passed the bill as amended. Thereupon the bill as originally passed by the assembly, and without the amendments adopted by the senate and afterward concurred in by the assembly, was presented to the governor, and was, after consideration, signed by him. *Held*, that, as the amended bill as adopted by both houses has never received the approval of the governor, and as the bill to which the governor's signature was attached was not the act which, in point of fact, was passed into a law by the legislature, neither the one nor the other has become a part of the statute law of this state.

On petition.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN and KALISCH.

For the petitioners, *Chauncey G. Parker.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The act of March 3d, 1873 (*Comp. Stat., p.* 4978), entitled "An act providing for decreeing and making known that certain laws and joint resolutions have become inoperative and void," provides that, at any time within one year after any law or joint resolution shall have been filed by the secretary of state, the attorney-general, at the direction of the governor, when the latter shall have reason to believe that any such law or joint resolution was not duly passed by both houses of the legislature, or duly approved, as required by the constitution of the state (section 1), or any two or more citizens of the state who shall have reason for so believing (section 3) may present a petition to the Supreme Court setting forth the facts and circumstances, and praying that such law or resolution may be decreed to be null and void.

The constitutionality of this statute was the subject of consideration in re "An act to amend an act entitled 'An act concerning public utilities'" (*In re Public Utility Board, ante p.* 303), and was there declared to be valid legislation.

Under its authority, George W. Jaegle and Ross M. Wickham, two residents of the county of Essex and citizens of this state, presented to this court, on the 29th day of April, 1912, a petition in which—after reciting that there was filed in the office of the secretary of state on the 1st day of May, 1911, what purported to be an act of the legislature entitled "An act to authorize and empower any municipality to acquire or construct, to maintain and to operate a plant or plants for the production and distribution (or either) of light, heat and power for its own public purposes, and for the purpose of selling and supplying the same to its own inhabitants or to any other municipality (or both), and to acquire all necessary real estate and works and machinery for supplying light, heat and power for such purposes, and to purchase light, heat and power produced by any other municipality," and that this act had been published by the secretary of state in the compila-

tion of the statutes of that year as chapter 325 thereof—the petitioners declare that they have reason to believe that such purported law was not duly passed by both houses of the legislature and duly approved as required by the constitution of this state; and set forth the facts and circumstances which formed the basis for their belief, as directed by the statute.

The second section of the act of 1873 provides that when such a petition has been presented this court shall have jurisdiction and power to proceed in a summary way and inquire into the facts and circumstances alleged, and may order witnesses to be sworn or affirmed and their depositions taken, and after a full hearing and consideration of the facts and circumstances proved may either dismiss the petition, or, if satisfied that the law or joint resolution mentioned therein was not duly and constitutionally passed by both houses of the legislature, or duly approved, decree the same, or any part thereof, to be null and void.

The petitioners, for the purpose of proving the facts and circumstances set forth in their petition as the basis of their averment that the statute in question was not constitutionally passed, called the clerk of the house of assembly of that year, and on his examination as a witness proved by him that the act under scrutiny originated in the house of assembly; that upon its introduction it was marked "Assembly Bill 558;" that on the 18th day of April, 1911, it came up in the assembly upon its final passage, and was lost; that on the same day it was reconsidered and laid upon the table; and that on the 19th day of April it finally passed the house of assembly. The petitioners then caused to be produced by the state librarian the original "Assembly Bill 558," which had been delivered to him by the clerk of the house after it was lost on April 18th, in accordance with the requirement of section 10 of "An act to regulate the state library." *Pamph. L.* 1878, *p.* 228. They also submitted from the files of the office of the secretary of state the statute itself (chapter 325), together with two senate amendments thereto which were filed with it. Neither of the amendments was annexed or in any way attached to the bill; nor do they contain anything by way of

endorsement, or otherwise, to indicate that they were ever submitted to the governor or received consideration from him. Upon the statute are endorsed the following certificates:

"House of Assembly No. 558, House of Assembly 4/19/1911; this bill having been three times read in the House of Assembly resolved that the same be passed. By order of the House of Assembly. (Signed) Edward Kenny, Speaker of the House of Assembly."

"Senate April 21, 1911: This bill having been three times read and compared in the Senate resolved that the same be passed as amended. By order of the Senate. (Signed) Ernest R. Ackerman, President of the Senate."

"House of Assembly 4/21/1911. This bill having been three times read in the House of Assembly resolved that the same be passed as amended. By order of the House of Assembly. (Signed) Edward Kenny, Speaker of the House of Assembly."

At its foot appears this endorsement, "Approved 1 May 1911, Woodrow Wilson, Governor."

Upon each of the senate amendments—which were multiple in character—appears the certificate of the president of the senate reading as follows: "Senate amendments to Assembly No. 558, April 21, 1911. These amendments having been three times read in the Senate resolved that the same be passed. By order of the Senate. (Signed) Ernest R. Ackerman, President of the Senate."

In addition to this certificate there is found upon each senate amendment, and upon the same page with the certificate, the stamp of the speaker of the house of assembly, but no other indication of its adoption by that body. The clerk of the house, however, testified that with regard to amendments coming from the senate the legislative rule was that the "*jurat*" (certificate) should be signed only by the presiding officer of the senate, and that the stamp of the speaker of the house upon the page upon which appears the *jurat* of the president of the senate was an indication that the house of assembly had adopted the amendment of the senate. Each of these senate amendments make material alterations in the

bill. Neither of them was approved by the governor, nor is either of them embodied in the bill which was so approved. More than this: A comparison of chapter 325 of the laws of 1911 with "Assembly Bill 558," filed with the state librarian on April 18th, 1911, shows the one to be an exact duplicate of the other.

The above-recited proofs conclusively demonstrate that the bill approved by the governor was that which originally passed the house of assembly, and not that which was amended by the senate, and which was afterward passed by that body and then returned to the assembly and passed by that house in its amended form. This being so, it follows, as was said by this court in *Pangborn* v. *Young,* 3 *Vroom* 31, that, as the amended bill adopted by both houses has never received the approval of the governor, and the bill to which the governor's signature is annexed, was not the act which, in point of fact, was passed into a law by the legislature, neither the one nor the other can be regarded as a legislative act which is enforceable by the courts.

We, therefore, in compliance with the requirement of the act of March 3d, 1873, decree that chapter 325 of the laws of 1911, entitled "An act to authorize and empower any municipality to acquire or construct, to maintain and to operate a plant or plants for the production and distribution (or either) of light, heat and power for its own public purposes, and for the purpose of selling and supplying the same to its own inhabitants or to any other municipality (or both), and to acquire all necessary real estate and works and machinery for supplying light, heat and power for such purposes, and to purchase light, heat and power produced by any other municipality," was not duly and constitutionally passed by both houses of the legislature, or duly approved by the governer, and is null and void.